IN THE UNITED STATES DISTRICT COURT
FOR WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID James.Britton.758 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. | Case No. 7:20mj24 <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Keith Teehan, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with the above-captioned Facebook account (hereinafter the "Subject Account") that are stored at premises owned, maintained, controlled, or operated by Facebook Inc., a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook Inc. to disclose to the government records and other information in its possession, further described in Section I of Attachment B, government-authorized persons will review that information to locate the information described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2. I, Keith J Teehan, am a Special Agent with the Bureau of Alcohol, Tobacco, and Firearms and Explosives (ATF), and have been since 2010. I have successfully completed the Criminal Investigator Training Program and ATF Special Agent Basic Training at the ATF National Academy, held at the Federal Law Enforcement Training Center. I have been employed in a Law Enforcement capacity since 1996 as a Deputy Sheriff, Police Officer and Special Agent. I have received training in various aspects of law enforcement, in particular

arson, explosives, narcotics and firearms investigations. Since becoming an ATF Special Agent, I have provided sworn testimony before the Federal Grand Jury and in the United States District Court in reference to violations of the Federal Firearms and Narcotics laws.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1), possession of a controlled substance with the intent to distribute and 18 U.S.C. § 922(g), knowing possession of a firearm by a prohibited person, have been committed, are being committed, and will be committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. On or about March 13, 2019, members of the Roanoke Police Department (RPD), United States Marshal Service (USMS), and the Bureau of Alcohol Tobacco, and Firearms (ATF) surveilled and then arrested James Edward BRITTON on an outstanding Virginia Department of Correction, Probation Violation (PB-15). The arrest occurred in the area of 161 Electric Road, in the City of Salem, in the Western District of Virginia.

6. BRITTON was searched incident to the arrest and on his person Law Enforcement located a small black bag containing approximately 22 grams of a white crystal substance suspected to be methamphetamine. The suspected methamphetamine was submitted to the Drug Enforcement Administration Mid Atlantic Laboratories where it was analyzed and confirmed to be methamphetamine.

7.     Law Enforcement conducted a search of the vehicle BRITTON was sitting in at the time of his arrest and located a black backpack, later identified by BRITTON to belong to BRITTON, which contained a quantity of small plastic bags, and a quantity of unused syringes. In addition, Law Enforcement located a digital scale and mobile phone on the passenger side of the vehicle. BRITTON later identified the mobile phone as belonging to him.

8.     In a post-Miranda interview of BRITTON, BRITTON informed Law Enforcement that he was supposed to have delivered the methamphetamine to an individual at the "Quick way House". BRITTON informed ATF that he was supposed to deliver the package, which contained the narcotics, at the direction of another individual whom BRITTON named during the interview.

9.     On or about 04/30/2019, ATF Roanoke interviewed a Confidential Source of Information, hereafter referred to as CSI #1, who informed ATF that BRITTON had been conversing using Facebook with multiple people about selling narcotics and firearms. CSI#1 provided ATF with screen shots from the Suspect Facebook Account which had the name James BRITTON. In the conversations BRITTON was in contact with multiple people and used language consistent with the possession, sale and distribution of narcotics. In addition to BRITTON's name being linked to the account, BRITTON is pictured in one of the Facebook screenshots. The Subject Account is associated with the username James.Britton.758.

10.    ATF Roanoke executed a search warrant on the aforementioned mobile phone seized from BRITTON during his arrest. Upon review of the information contained on the device, ATF Roanoke observed multiple pictures of BRITTON with firearms. One firearm pictured in multiple pictures with BRITTON is identified as a Ruger, model SR-762, 7.62 caliber semiautomatic rifle with serial number 562-07376. ATF Roanoke utilizing the serial number confirmed the firearm was previously reported stolen.

11.    On or about 06/26/2019, ATF Roanoke interviewed Confidential Source of Information #2 (CSI#2) in reference to BRITTON. CSI#2 was shown the picture of the Ruger model SR-762

firearm which had been obtained through the search warrant executed on BRITTON's mobile phone; CSI#2 informed ATF that BRITTON had contacted CSI#2 in or around March 2019 utilizing Facebook. During this contact through Facebook, BRITTON had repeatedly attempted to sell CSI#2 the Ruger model 7.62 firearm. CSI#2 informed ATF that BRITTON continued to lower the proposed sale price throughout the contact.

12.  In addition to the firearms activity described, CSI#2 informed ATF that BRITTON had previously sent multiple pictures through Facebook of what CSI#2 believed to be narcotics including, but not limited to two large bags of what CSI#2 identified as "ICE". CSI#2 stated all contact with BRITTON occurred through Facebook.

13.  As background, ATF obtained certified conviction and sentencing orders for multiple previous felony convictions sustained by BRITTON. Each prior conviction were offenses which were punishable by imprisonment by a term exceeding a term of one year.

14.  ATF Roanoke Special Agent and Interstate Nexus Expert Keith Teehan, utilizing the description of the Ruger, model SR-762, 7.62 caliber rifle, serial number 562-07376, determined that the item is a firearm as defined in the United States Code, that it was manufactured outside the Commonwealth of Virginia, and had therefore moved in and/or affected interstate or foreign commerce.

15.  Based on my training, knowledge and experience, I have come to understand that individuals will often use social media, to include Facebook, to plan, prepare, and further their criminal activity to include the acquisition, possession, sale, and/or distribution of narcotics and firearms. I have also come to understand that individuals will also use the private message feature of Facebook to communicate privately with others in furtherance of illegal activity to include the acquisition, possession, sale, and/or distribution of narcotics and firearms.

16.  Based upon the facts set forth above and other information and/or intelligence known to Law Enforcement involved in this investigation, your affiant believes there is sufficient probable

cause to believe the sought-after Facebook Account contains information related to the possession, sale and distribution of illegal narcotics and firearms.

17. A preservation request concerning the subject account listed in Attachment A was sent to Facebook on March 12, 2019.

## FACEBOOK

18. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

19. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account. Facebook identifies unique Facebook accounts by a user's email address, the user ID number, or the username associated with a Facebook profile.

20. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

21. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

22. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

23. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when he or she uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

24. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.

Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

25. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

26. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

27. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

28. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

29. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

30. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized

message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

31. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

32. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

33. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

34. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

35. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the

types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

36. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. From my training, experience, and investigation, I know that a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Finally, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under

investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

37. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

38. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

### CONCLUSION

39. Based on the foregoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States ... that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

40.   It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application, affidavit, and search warrant. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations and not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, e.g., by posting them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

_____
Keith Teehan
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on _July 31_, 2019

_____
Robert S. Ballou
UNITED STATES MAGISTRATE JUDGE